FRANK A. SHERMAN, Respondent, v. HARRIET F. DROUBAY, PAUL DROUBAY, CLARA A. GILE and JOSEPH A. GRAHAM, Appellants.

No. 1399.    (74 Pac. 348.)

Mortgages: Foreclosure: Venue: Constitution: Statutes. Constitution, article 8, section 5, declares that all civil and criminal business arising in any county must be tried there. Revised Statutes 1898, section 3498, provides that there can be but one action to recover a debt secured by mortgage. Section 3517 enacts that a mortgage of real property shall not be deemed a conveyance, so as to enable the owner of the mortgage to recover possession of real property without a foreclosure and sale. Section 2928 provides that mortgage foreclosures must be tried in the county where the subject of the action is situated. *Held*, that, where a note secured by mortgage is payable in one county, and the property is in another, foreclosure is to be commenced not in the former, but in the latter county, section 2928 not being inconsistent with the Constitution.[1] BARTCH, J., dissenting.

(Decided November 9, 1903.)

Appeal from the Third District Court, Salt Lake County.—*Hon. W. C. Hall*, Judge.

[1] Konold v. Rio Grande Wes. Ry. Co., 16 Utah 151, 51 Pac. 256; Overland Mining Co. v. McMaster, 19 Utah 177, 56 Pac. 977; Gibbs v. Gibbs, 26 Utah 382, 73 Pac. 641; Fields v. Daisy Gold Min. Co., 26 Utah 373, 73 Pac. 521; Deseret Irrigation Co. v. McIntyre, 16 Utah 398, 402, 52 Pac. 628, 629; Mosby v. Gisborn, 17 Utah 257, 275, 54 Pac. 121, 126; Bach v. Brown, 17 Utah 435, 443, 53 Pac. 991, 994; Condon v. Leipsiger, 17 Utah 498, 501, 55 Pac. 82; Woodward v. Edmunds, 20 Utah 118, 121, 57 Pac. 848.

Action to foreclose a certain trust deed upon certain real estate situated in Tooele county given to secure two promissory notes by their terms payable in Salt Lake City, Utah. From a judgment in favor of the plaintiff, the defendants appealed.

REVERSED.

*C. S. Price, Esq.*, and *W. M. McCrea, Esq.* for appellants. *Elmer B. Jones, Esq.*, of counsel.

A mortgage does not affect a transfer of title, but merely creates a lien upon the property. Thompson v. Cheesman, 15 Utah 43, 48 Pac. 477.

"In those states in this country where the mortgage is considered a mere lien, and the legal estate as remaining in the mortgagor, the decree (of foreclosure) operates either to deprive the mortgagor of that estate, by vesting it in the mortgagee as by strict foreclosure or by sale to convey it to the purchaser, and therefore would be regarded as a local action. If a sale of the property is asked for, as this operates *in rem*, jurisdiction is restricted to the local court of the county in which the land lies." 2 Jones on Mortgages, 367, sec. 1444; Campbell v. West, 86 Cal. 197, 24 Pac. 1000; Stephens v. Ferry, 48 Fed. 7; Wood v. Mastick, 2 Wash. T. 64, 3 Pac. 612; Chadborn v. Gilman, 29 Iowa 181.

"In those states where a mortgage is regarded as a mere lien, if the sale of the property is asked for, this is essentially a proceeding *in rem*, and the court where the land lies has jurisdiction." 2 Pingree on Mortgages, sec. 1739; 1 Wiltsie on Mort. Foreclosure, sec. 25; Vallejo v. Randall, 5 Cal. 461; Miller v. Hull, 3 How Pr. (N. Y.) 325.

*Messrs. Powers, Straup & Lippman* for respondent.

STATEMENT OF FACTS.

On November 1, 1899, the defendants executed and delivered to the plaintiff two promissory notes— one for $300, due June 1, 1900, and one for $275, due November 1, 1900—both of which notes upon their face provided, "Payable at the Wilson-Sherman Company's office in Salt Lake City, Utah," etc.   To secure the payment of these notes the defendants executed and delivered a trust deed upon certain real estate situated in Tooele county.   The notes being past due and unpaid, on the fourth day of November, 1901, the plaintiff commenced an action in the district court of Salt Lake county for the foreclosure of the said trust deed and for a personal and deficiency judgment against the said defendants. Personal service was had on the said defendants.   They appeared, and demurred to the complaint for want of jurisdiction, contending that the action should have been brought in Tooele county.   The court overruled the demurrer, and upon proceedings properly had gave judgment for said plaintiff as is usual in such case, providing for the sale of the mortgaged premises, and for a deficiency judgment.   From such order and judgment defendants appeal.

ROLAPP, District Judge, after stating the facts, delivered the opinion of the court.

This appeal involves simply the determination of the question as to where an action shall be brought for the foreclosure of a real mortgage, when the indebtedness by express terms is made payable in one county and the real estate securing the payment of such indebtedness is situated in another county.   Our statute provides that "there can be but one action for the recovery of any debt secured by mortgage" (Rev. Stat. 1898, section 3498); that "a mortgage of real property shall not be deemed a conveyance, whatever its terms, so as to enable the owner of the mortgage to recover possession

of the real property, without a forecolsure and sale''
(Id. section 3517); and that ''actions for the following
causes must be tried in the county in which the subject of
the action or some part thereof is situated: . . . Subd.
3. For the foreclosure of all liens and mortgages on
real property'' (Id. section 2928). Respondent con-
tends, however, that this latter section is unconstitu-
tional, as being in conflict with that part of the provis-
ions of article 8, section 5, of the Constitution of this
State, which reads as follows: ''All civil and criminal
business arising in any county must be tried in such
county.'' As general propositions of law, he insists that
in case of a debt evidenced by a promissory note secured
by mortgage the debt is the principal thing, and the
mortgage is but an incident and collateral thereto; that
with the establishment of the doctrine in this country
that a mortgage is a mere security for the payment of
the debt, a breach of condition for the payment merely
gives to the mortgagee a right to proceed for his judg-
ment against the security; that, in other words, the
breach of payment gives rise to the right of action, and
that the mortgagee's right to foreclose does not accrue
and his cause of action does not arise until the time
when and the place where the debt becomes due and re-
mains unpaid; and that it is upon this essential fact of
failure to pay the notes that the right to foreclose the
mortgage is based. Upon this correct statement of fun-
damental legal principles, and based upon the decisions
of this court that an action can only be commenced
in the county where the cause of action arises (Konold
v. Rio Grande Wes. Ry. Co., 16 Utah 151, 51 Pac. 256),
and the further decision that a cause of action for the
nonpayment of a note arises alone in the county in
which the instrument is made payable (Overland Mining
Co. v. McMaster, 19 Utah 177, 56 Pac. 977), the respond-
ent very naturally concluded to commence this action in
the county where the note, by its express terms, was
made payable, rather than to follow the statutory direc-
tion to commence such action where the mortgaged

premises were situate.  Counsel for respondent were
doubtless aware of the fact that this court, by way of
dicta, in two cases has held that section 2928, Rev. St.,
affecting the venue of actions for mortgage foreclosure,
is in force, and not unconstitutional; yet they evidently
reasoned that whenever the matter should come di-
rectly before this court the contrary conclusion must
inevitably follow from the past views of this tribunal
upon the constitutional clause involved.

The more recent decisions of Gibbs v. Gibbs, 26
Utah 382, 73 Pac. 641, and Fields v. Daisy Gold Min.
Co., 26 Utah 373, 73 Pac. 521, however, overrule the for-
mer decisions and are more in accord with my views of
the correct interpretation of the constitutional clause in
question than are the decisions rendered prior to that
time.   It has always been difficult for me to understand
the reasons for the past judicial correctness of the ap-
parently wholly unambiguous language in our Constitu-
tion:   "All civil and criminal business arising in any
county must be tried in such county."   This statement
would seem to be so plain that it would require no ju-
dicial interpretation, much less to have caused so much
uncertainty as to venue as has in fact been produced.
I apprehend that the error has arisen from the judicial
notion that the constitutional convention intended to up-
set an existing judicial system, when, as a matter of fact
they apparently desired simply to provide for the holding
of trial courts in each county, and gave to such courts
probate as well as ordinary civil and criminal jurisdic-
tion. With this, as I think, erroneous judicial notion be-
fore them, the Supreme Court of this State felt impelled
to give an entirely different meaning to the constitu-
tional clause in question than the language itself would
ordinarily warrant.   In the dissenting opinion of Gibbs
v. Gibbs, supra, Justice BARTCH severely criticises the
chief justice for substituting the words "causes of ac-
tion" for the word "business" in the clause mentioned;
and yet I can conceive of no other reasonable inference
that can be drawn from the pre-existing opinions of this

court upon this subject. Says the court in the case of
Konold v. R. G. W. Ry. Co., 16 Utah 151, 155, 51 Pac.
256, 257, when this question was first before this court:
"The manifest intention was that all suits, civil and
criminal, should be brought, and the cases tried, in the
county in which the causes of action arose." Clearly,
that is as nearly the same substitution of language as
that indicated by the chief justice. Again, in the case
of Desert Irrigation Co. v. McIntyre, 16 Utah 398, 402,
52 Pac. 628, 629, it is said: "A case must be com-
menced in the county where the cause of action arose."
In the case of Mosby v. Gisborn, 17 Utah, 257, 275, 54
Pac. 121, 126, the court uses the following language af-
fecting the same constitutional clause: "The phrase,
'civil business' means such civil business as amounts to
a cause of action, as the law defines a cause of action;
and by 'criminal business' is meant such conduct, at-
tended with such intent, as amounts to a crime, as the
law defines a crime."

Later, when the objection was raised that such in-
terpretation would make nugatory certain statutory pro-
visions, this court expressed itself as follows in the case
of Bach v. Brown, 17 Utah 435, 443, 53 Pac. 991, 994:
"Under the mandate of the Constitution the action must
be commenced where the cause arose. It is true, under
the former practice, before statehood, a transitory ac-
tion, like the one at bar, could be brought where the de-
fendant resided; but that practice no longer exists in
this State. The people in their sovereign capacity, by
their fundamental law, have ordained otherwise, and
neither by interpretation nor legislative enactment can
the old practice be restored. Sess. Laws 1896, c. 93, in
so far as it authorizes the bringing of an action upon a
contract in the county where the defendant resides,
when such contract, by stipulation therein, is to be per-
formed in another, is in conflict with Const. art. 8, sec-
tion 5, and is void." Again, in the case of Condon v.
Leipsiger, 17 Utah 498, 501, 55 Pac. 82, the following ex-
pression of the law is found: "The phrase 'civil bus-

iness' means the fact or facts that constitute the cause of action, and 'criminal business' means criminal acts constituting the crime. . . . When all the facts essential to a cause of action exist, the cause of action has arisen, and can only be tried in the county in which it arose.'' Again, in Woodward v. Edmunds, 20 Utah 118 121, 57 Pac. 848, the court uses the following language: "It is a fundamental right of every defendant in an action in this State to have the same commenced and tried within the county where the act which gave rise to the cause of action occurred.''

From these expressions it would seem settled without doubt that this court intended to convey that the word "business" in the Constitution meant "causes of action," including probate and other civil proceedings. Following this interpretation, by indirect substitution, and as a resulting consequence thereof, the word "arising," also contained in the same clause, became correspondingly amazingly important and difficult of interpretation, and nearly every decision affecting this clause has striven to determine when a "cause of action" should be said to have "arisen." In my opinion, none of this substituted interpretation should have been resorted to, and I think could have been entirely obviated by accepting the ordinary and natural meaning of the words used in the Constitution as the meaning most likely intended by its framers. The word "business," in its ordinary broad sense, simply means those matters which occupy the attention and labor of men engaged in definite affairs. Webster's definition of the word "arise" is "to come into being or notice." Remembering now that the clause in question refers wholly to courts, court officers, and court affairs, and applying the above ordinary definitions of the words actually used to such conditions, then the paraphrased clause would read: "All civil and criminal matters occupying the attention and labor of men engaged in legal affairs (business) coming into being or notice (arising) in any county, must be heard and determined (tried) in

such county.'' If the constitutional convention had used this verbose method of stating what they as clearly expressed in fewer words, there could have been no opportunity for maintaining that by this language they intended by implication to both repeal existing statutory provisions and to overrule established common-law principles. Unquestionably, the members of the constitutional convention were fully aware of the then existing statutory and common-law principles affecting the venue of actions and proceedings, and they apparently simply desired to provide that all legal matters coming into being in any particular county under the then existing law should be heard and determined by the courts created by them in such particular county, and not transferred to some other county, probably more convenient to the bench and bar. I fully agree with the view expressed by Justice BARTCH in his dissenting opinion in the case of Gibbs v. Gibbs, supra, that a judge ''has no right to substitute his own notion of what the phraseology of a particular provision should be for that of the sovereign power,'' and I further think that there should not be impugned to that sovereign power an intention to overthrow established legal principles, so vitally important as those affecting the venue of their disputes, unless such intention is clearly manifest from the document itself, and should not be determined by the unrecorded notions of any particular person as to the public needs or demands in that regard.

From the foregoing views it is apparent that I am of the opinion that there are no statutory provisions of this State which conflict with the provisions of article 8, section 5, of the Constitution. Consequently, the action at bar should have been commenced, as the statute directed, in the county of Tooele, where the real property securing the debt was situate. The demurrer to the complaint was improperly overruled, and judgment illegally entered.

The judgment is reversed, and the cause remanded to the lower court, with instructions to proceed in ac-

cordance with the views herein expressed.    Under the circumstances, we are of the opinion that the costs on appeal should be equally divided between the parties.

BASKIN, C. J.—I concur on the grounds stated in the opinion in the case of Fields v. Daisy Min. Co., 26 Utah, 373, 73 Pac. 521.

BARTCH, J., dissents.