SANIPOLI v. PLEASANT VALLEY COAL CO.

No. 1733.   Decided September 14, 1906 (86 Pac. 865).

1. COURTS—JURISDICTION—PLACE OF ACCRUAL OF CAUSE OF ACTION—VENUE—CONSTITUTIONAL PROVISIONS. The provision in section 5, article 8 of the Constitution, all civil and criminal business arising in any county must be tried in such county unless a change of venue be taken as provided by law, neither grants nor limits the jurisdiction of the courts but prohibits a change of venue, except as by law provided.

2. CONSTITUTIONAL PROVISIONS—CONSTRUCTION. The word business as used in the constitutional provision is not synonymous with causes of action, nor does it refer to the acts or breach which gave rise to the cause of action. It means that the court shall transact the business of the court, the trial and disposition of all matters civil and criminal, in the county where the business exists unless a change of venue be had as by law provided.

3. VENUE—TRANSITORY ACTIONS—PLACE OF TRIAL.   Under Revised Statutes 1898, section 2940, providing that the summons, together with a copy of the complaint, may be served "where the defendant may be found," where defendant was served in a transitory tort action in the county of his residence, the court acquired jurisdiction of the parties and subject-matter and the action was therefore triable there, though the acts constituting the tort did not occur in such county, notwithstanding Constitution, art. 8, section 5, providing that all civil and criminal business arising in any county must be tried in that county.

4. PLEADING—DEMURRER—JURISDICTION.   A demurrer on the ground that the court has no jurisdiction of defendant's person only raises the question whether defendant is such person as can be subjected to the process and jurisdiction of the court.

5. JURISDICTION—VENUE—TRANSFER OF CAUSE.   If the court of a county where the action was commenced had jurisdiction of the subject-matter and the defendant was there subject to the process of that court but by reason of some constitutional or statutory provis-

ion had the right to insist that the action be tried in another county, the court is not authorized to dismiss the action but to transfer it.

6. SAME. In a transitory tort action the constitutional provision referred to does not authorize the transfer of a cause to the county in which the acts constituting the tort occurred.

7. VENUE—CHANGE—COMMENCEMENT OF ACTION IN IMPROPER COUNTY. Since the repeal of Revised Statutes 1898, section 2933, and section 2934, subd. 1, authorizing a change of venue when the county designated in the complaint is not the proper county, etc., there no longer exists any statute authorizing a change of venue because the county in which the action was commenced was not the proper county for trial.

8. CONSTITUTIONAL LAW—CONSTITUTIONAL PROVISIONS—CONSTRUCTION. Proceedings of a constitutional convention may be considered in construing a provision of the Constitution for the purpose of determining the purpose intended to be subserved thereby.[1]

BARTCH, C. J., dissenting.

APPEAL from District Court, Salt Lake County; M. L. Ritchie, Judge.

Action by Frank Sanipoli against the Pleasant Valley Coal Company. From a judgment for defendant, plaintiff appeals.

REVERSED.

*C. G. Gatrell* for appellant.

*Sutherland, Van Cott & Allison* for respondent.

### APPELLANT'S POINTS.

A demurrer on the ground that the court has no jurisdiction over the person of defendant, raises only the question whether the defendant is such a person as can be subjected to the process of the court. (*Belden v. Wilkinson,* 44 N. Y. App. Div. 421; *Railroad v. Railroad,* 4 Hun 712.).

---

[1] State v. Norman, 16 Utah 457, 52 Pac. 986.

This being a transitory action, the plaintiff had the right to bring his suit in any county in which he might find defendant, and in which the district court might obtain jurisdiction by service of process or appearance, section 2932, Rev. Stat. 1898, fixing the place of trial of such actions having been repealed. (*White v. Railroad,* 25 Utah 346; *Fields v. Daisy,* 26 Utah 373; *Gibbs v. Gibbs,* 26 Utah 382; *Sherman v. Droubay,* 27 Utah 47; *Snyder v. Pike,* 83 Pac. 692.)

"The word 'business' as it is used in the constitution refers only to matters that are pending before the court, and not to criminal acts committed . . . nor to disputes between individuals . . . which may or may not be brought before the court." (*Gibbs v. Gibbs,* 26 Utah 382.)

And the place of trial must be as provided by statute. Not only *may* an action be tried in some other county than that in which the cause of action arose, but it may happen by reason of some statutory provision, that it must be tried elsewhere, and cannot be tried in the county where such cause of action arose. (*Sherman v. Droubay,* 27 Utah 47.)

RESPONDENT'S POINTS.

Objection to jurisdiction may be raised by demurrer where it appears upon the face of the complaint that the court has no jurisdiction of the person or subject-matter; but unless want of jurisdiction appears upon the face of the complaint, the objection must be raised by a motion to set aside the summons, where an appearance would confer jurisdiction, or in cases where an appearance would not confer jurisdiction, it may be raised by answer or at the trial, or upon appeal, or by the court itself. (*Gurney v. Railroad Co.,* 37 N. Y. St. Rep. 560.)

STRAUP, J.

In the complaint filed in the district court of Salt Lake county it was alleged that the defendant was a corporation organized under the laws of this state; that it had its principal place of business and residence in Salt Lake county; and

that it was the owner of and operated a coal mine in Carbon county, where, it was alleged, the plaintiff was in its employ and was injured through is negligence. Summons and a copy of the complaint were served on the defendant in Salt Lake county. It demurred to the complaint for want of jurisdiction (1) of the person of the defendant; and (2) of the subject-matter of the action. The question to be decided involves the rulings of the court sustaining the demurrer and dismissing the action. The respondent seeks to uphold the rulings because of the clause in section 5, art. 8, of the Constitution, "all civil and criminal business arising in any county must be tried in such county." The claim made is that the acts of negligence which gave rise to the cause of action having occurred in Carbon county, the district court of Salt Lake county had neither jurisdiction of the subject-matter, nor of the person of the defendant. The interpretation of this provision in the Constitution has given rise to much diversity of opinion in numerous cases before this court. In the case of *Konold v. Rio Grande Western Ry. Co.*, 16 Utah 151, 51 Pac. 256, where the acts of negligence occasioning personal injury occurred in Emery county, and suit was brought in Weber county, it was held that the district court of Weber county had no jurisdiction of the subject-matter, because the cause of action arose in Emery county, and, under the constitutional provision, the district court of that county had exclusive original jurisdiction of the action. The doctrine announced in the *Konold Case* was followed and applied in *Mosby v. Gisborn*, 17 Utah 257, 54 Pac. 121; *Bach v. Brown*, 17 Utah 435, 53 Pac. 991; *Condon v. Leipsiger*, 17 Utah 498, 55 Pac. 82; *Mining Co. v. McMaster*, 19 Utah 177, 56 Pac. 977, and in *Woodward v. Edmunds*, 20 Utah 118, 57 Pac. 848. Later by a number of decisions of this court, that doctrine was overruled, and a construction placed upon the constitutional provision entirely different from the one announced in the *Konold Case*. (*White v. Rio Grande Western Ry. Co.*, 25 Utah 346, 71 Pac. 593; *Fields v. Mining Co.*, 26 Utah 373, 73 Pac. 521; *Gibbs v. Gibbs*, 26 Utah 382, 73 Pac. 641; *Sherman v. Droubay*, 27 Utah 47, 74 Pac. 348; *Snyder v. Pike*,

30 Utah 102, 83 Pac. 692.)   In these cases the constitu-
tional provision has been given an interpretation, to the effect,
that it does not grant nor limit jurisdiction, and that it

"Does not change the common-law practice in respect to venue either
in civil or criminal actions, but is simply an announcement of the com-
mon law upon that subject."

And that transitory actions

"Could be instituted in any jurisdiction in which the defendant was
served with process, on the principle that as soon as a person becomes
liable in such action to another, either by reason of a tort or contract,
the liability attaches to the person and follows him wherever he goes.' "

The holding of these cases is that the constitutional provis-
ion does not confer nor restrict jurisdiction, but that the juris-
diction of the district court is as prescribed and defined by
section 7, art. 8, of the Constitution, which provides that:

"The district court shall have original jurisdiction in all matters
civil and criminal not excepted in this Constitution, and not prohibited
by law."

Under these decisions the court had jurisdiction of the
subject-matter of the action. To hold with the court below in
sustaining the demurrer on the ground of a want of such jur-
isdiction, and to re-establish the rule announced in the *Kon-
old Case,* requires the overruling of all the later cases. We
have no disposition to depart from the conclusions reached in
these cases.   The question has been before this court, and en-
gaged its attention during the last ten years, in a dozen or
more cases, in which diverse learned opinions have been ex-
pressed upon it.   The necessity for stability and uniformity
in the construction and interpretation of the law requires that
the doctrine of *stare decisis* be applied.   Reopening the ques-
tion at every change in the personnel of the court is fraught
with uncertainty and vacillation. We therefore adhere to and
reaffirm the rule announced, that the court had jurisdiction of
the subject-matter.

It, however, is contended that, even though the court had jurisdiction of the subject-matter, still it had no jurisdiction of the person of the defendant (1) because of what was said in the later cases; and (2) because of the constitutional provision in question. It is claimed that the effect of the decisions in *White v. Ry., Gibbs v. Gibbs,* and *Fields v. Min. Co.,* is that the court in those cases had no jurisdiction of the person of the defendant had they seasonably raised the question. Such is not the purport of the decisions. With respect to such inquiry, the only question decided was:

"Where the court in which an action is instituted has jurisdiction of the subject-matter, the lack of jurisdiction on other grounds must, under the Code of Civil Procedure, be raised by demurrer or answer or the right to object to the jurisdiction on other grounds is waived by the defendant,"

and inasmuch as each of the defendants there entered a general appearance, by a plea to the merits, he was precluded from raising the question. The effect of these decisions is, not that the court had no jurisdiction of the person in the first instance, and only acquired jurisdiction from a general appearance, but that the defendant's right to raise such a question was waived. It having been determined that the lower court had acquired such jurisdiction from an appearance and a plea to the merits, it was, therefore, wholly unnecessary and immaterial to determine whether the court also acquired such jurisdiction in some other manner. Here, a timely attempt was made to raise the question, but we fail to find anything on the face of the complaint tending to show that the defendant was not subject to the process and jurisdiction of the court.

"Jurisdiction of the person is ordinarily understood to mean the power, obtained by the service of a summons or other proper notice or by an appearance, to render a personal judgment." (17 Am. & Eng. Ency. Law, 1060.)

Courts having jurisdiction of the subject-matter

"Obtain jurisdiction over the parties by the plaintiff appearing and invoking their aid, and over the defendant by his being brought before

them, either by voluntary appearance or by process served." (Brown on Jurisdiction [2d Ed.], section 44; Works on Courts and Their Jurisdiction, section 13.)

"The meaning of the clause 'that the court has no jurisdiction of the person' is, that the person is not subject to the jurisdiction of the court, and not that the suit has not been regularly commenced." (Estee's Pleading [4th Ed.], section 3081; Bliss, Code Pleading [2d Ed.], section 405.)

"That ground of demurrer raises only the question whether the defendants are such persons as can be subjected to the process and jurisdiction of the court." (*Belden v. Wilkinson*, 44 App. Div. 421, 60 N. Y. Supp. 1083.)

The statute (section 2940, Rev. St. 1898) provides that the summons, together with a copy of the complaint may be served "where the defendant may be found." The court having jurisdiction of the subject-matter, and the complaint showing a mere transitory action against the defendant residing in the county where the suit was commenced, we fail to find anything on the face of the complaint to justify a holding that the defendant was not subject to the process and jurisdiction of the court. But it is urged that, by reason of the constitutional provision, the court acquired no such jurisdiction, and that the defendant had the right to insist, under its demurrer, that the cause should be tried in Carbon county, where, it is also claimed, it should have been commenced. If the court had jurisdiction of the subject-matter, and if it shall be assumed, as is argued, that the word "business" in the Constitution is synonymous with and means "causes of action," and that the defendant had the right to insist that the cause of action be "tried" in the county where it arose, then, it would seem, a demurrer on the ground of want of jurisdiction of the person would not reach the question, but that a motion to transfer the cause to the proper county would be the appropriate remedy. It may, however, be said that since the repeal of section 2933 and subdivision 1 of section 2934 of the Revised Statutes of 1898, there no longer exists any statute giving a right to a change of venue on the ground that the action was commenced not in the proper county for trial. But if the Constitution, as is claimed, gives a defendant the right to insist that a cause of action shall be tried in the county where

it may be said to have arisen, when it has been commenced before a court of another county having jurisdiction of the subject matter, then the court, by force of the Constitution, would be authorized to transfer the cause to the proper county in the absence of a statute giving it such power. If the court of the county where the action was commenced had jurisdiction of the subject-matter, and the defendant was there subject to the process of that court, but by reason of some constitutional or statutory provision he had the right to insist that the action be "tried" in another county, we see no authority of the court to dismiss the action as was here done by it.

In view, however, of the conclusions reached and of the rulings made in the later cases and of the interpretation there given the constitutional provision, a defendant has not the right because of such provision, to insist that the action shall be commenced or tried in the county where the acts, which gave rise to the cause of action, occurred. After this court, in effect, held that the constitutional provision does not grant nor limit jurisdiction, and is but declaratory of the common-law with respect to venue, and that transitory actions could be instituted in any jurisdiction where the defendant may be found and served with process, we no longer see any basis for the contention that a defendant, in such an action, has the right to insist that it must be commenced or tried in the county where it arose. Furthermore, the interpretation urged that the word "business" is synonymous with and means "cause of action," is, we think, a misconception of the intended meaning of section 5, art. 8, of the Constitution. The entire section reads as follows:

"The state shall be divided into seven judicial districts, for each of which, at least one, and not exceeding three judges, shall be chosen by the qualified electors thereof. The term of office of the district judges shall be four years. Except that the district judges elected at the first election shall serve until the first Monday in January, A. D. 1901, and until their successors shall have qualified. Until otherwise provided by law, a district court at the county seat of each county shall be held at least four times a year. All civil and criminal business arising in any county, must be tried in such county, unless a change of venue be taken, in such cases as provided by law. Each judge of a district court shall be at least twenty-five years of age, a member of the bar, learned

in the law, a resident of the territory or state of Utah three years next preceding his election, and shall reside in the district for which he shall be elected. Any district judge may hold a district court in any county at the request of the judge of the district, and upon request of the Governor, it shall be his duty to do so. Any cause in the district court may be tried by a judge *pro tempore*, who must be a member of the bar, sworn to try the cause, and agreed upon by the parties, or their attorneys of record."

When the word "business," in the particular clause where it is found, is read in connection with what precedes it, "a district court at the county seat of each county shall be held at least four times a year," it is apparent that it was used in the ordinary sense as defined by Webster, "that which one has to do or should do; special service, duty or mission; that which engages the time, attention or labor of any one." That is to say, a district judge going to a county to hold court shall there try or dispose of all matters and proceedings, both civil and criminal, which have there been brought into existence for trial or disposition, unless a change of venue be taken as by law provided; there to do that which is required of the court to be done or that it should do, and which has there arisen to engage its time and attention. The section provides that, not only shall a district court be held in each county, but, also, that all civil and criminal business arising in the county shall be tried in such county; that is, whatever civil or criminal business has there arisen for trial or disposition shall there be tried or disposed of. In brief, the court shall transact the business of the court in the county where the business exists. Such meaning is made clear by reading the proceedings of the constitutional convention relating to the section in question. While we have somewhat doubted the propriety of resorting to the proceedings in aid of a construction and interpretation of a constitutional provision, since the Constitution does not derive its force from the convention which framed it, but from the people who ratified it, and that the intent to be arrived at is that of the people who adopted the Constitution rather than those who framed it, yet we find ample authority and well-established precedents justifying courts in examining the proceedings in order to determine the

meaning of a doubtful provision of the Constitution. (*State v. Norman,* 16 Utah 457, 52 Pac. 986; 8 Cyc. 740 and cases; 6 Am. & Eng. Ency. Law, 930 and cases; Cooley's Const. Lim. [7 Ed.], 101.) While such proceedings are not as conclusive of the meaning of a constitutional provision as are legislative proceedings of the meaning of a statutory provision, yet, in the language of Judge Cooley,

"When the inquiry is directed to ascertaining the mischief designed to be remedied, or the purpose sought to be accomplished by a particular provision, it may be proper to examine the proceedings of the convention which framed the instrument. Where the proceedings clearly point out the purpose of the provision the aid will be valuable and satisfactory; but where the question is one of abstract meaning, it will be difficult to derive from this source much reliable assistance in interpretation."

Upon an examination of the proceedings here, the purpose sought to be accomplished by the particular clause in the Constitution in question is clearly disclosed. On page 1503 of the official reports of the proceedings, the following appears: "Mr. Evans (Weber). I desire to offer the following amendment to section 5, after the word year: 'All civil and criminal business arising in any county must be tried in such county, unless a change of venue be taken in such cases as may be provided by law, or upon consent of the parties, in writing, in civil cases.' Mr. Varian. What is the necessity for that? Mr. Evans (Weber). I think the article by implication now would require that all the business should be transacted in the county where it arises. My only purpose was to make it certain that all the business should be tried in the county where it arises, and I want to add this with the qualification there of cases where a change of venue might be taken as provided by law. There may be some criminal case where all the jurors in the county are prejudiced and it would be necessary to remove it to another county, and then in civil cases, if parties want to stipulate it into another county, they can do so. Mr. Varian. Won't that amendment cut out the general proposition for a change of venue in civil cases, whether the parties stipulate or not? Mr. Evans (Weber). I think not. Mr. Varian. It seems so to me; that is purely a matter of legis-

lation anyhow. Mr. Evans (Weber). Stipulation is a mat-
ter, anyway, of consent, and that might be stricken out—that
part of it. If there is any objection to that I would ask that
that part be stricken out. The amendment as modified was
agreed to."

Viewing the section as it was before the insertion of the
amendment, it is manifest that the convention was not thereby
dealing with nor having under consideration the subject-mat-
ter of granting or limiting jusisdiction of courts, nor as to
prescribing or defining the loci of actions. From what is
made to appear by the proceedings of the convention, when
the amendment was proposed it is also evident that the
amendment did not pertain to such subjects, nor did it in any-
wise relate thereto. To say that it did pertain thereto is to
say that it was not germane to any subject in the section
which was sought to be amended by it. Giving the word
"business" and the clause wherein it is found the meaning
which we have given it, makes it germane to the subject-mat-
ter of the section, especially to the clause or sentence preced-
ing the one wherein it is found, and also makes the inquiry
of Mr. Varian, when the amendment was proposed, very per-
tinent. That is to say, what is the necessity of a provision re-
quiring the court to transact the business of the court in a
county where the business to be transacted exists ? And, too,
it makes the reply of Mr. Evans to the inquiry very appropri-
ate, when he said: "I think the article, by implication, now
[that is, without the amendment] would require that all the
business should be transacted in the county where it arises"
(where it was brought into being or notice for transaction;
there to be tried); and shows, as was stated by him, that his
only purpose, by the amendment, was to make such fact cer-
tain. No one has yet contended, and no one can successfully
contend, that, without the amendment, there is anything in
the article which, even by implication, gives actions the char-
acteristic of a locus, and requires transitory, or even local
actions, to be commenced or tried in the county where the
acts giving rise to the cause of action occurred, or that there is
anything in the article which even squints at such a principle,

or deals with such a subject. To give the amendment such a meaning and as is here urged, that "business" is synonymous with or means "causes of action," and that, therefore, a cause of action must be commenced and tried in the county where the acts giving rise to it occurred, renders the inquiry of Mr. Varian and the reply of Mr. Evans destitute of all force, and completely destroys the universal and natural distinction between local and transitory actions. If it was sought and intended to establish, by the organic law of the state, a rule so widely departing from the long and well-established principles of the common law and by statutes, such inquiry and reply are, not only groundless, but meaningless. These members of the convention were lawyers and practitioners of great ability and eminence. To attribute to them the assertion that the article, without the amendment, gave all actions a character of locus, and required all causes of action, both local and transitory, to be commenced and tried in the county where some or all of the acts giving rise to the cause of action occurred, is to impeach their learning. It is quite evident to us that this amendment was proposed and inserted in the section, not to destroy the distinction between local and transitory actions, nor to fix the loci of actions, but merely to prevent the court from transferring cases and proceedings which had been brought into existence for trial or disposition in a county, to places in other counties, for the mere convenience of the bench and bar, as had been the practice in territorial days in remote counties of the territory. It was sought, by the organic law, to prevent this, and to permit a change of venue only as by law provided. We therefore reaffirm the doctrine which, in effect, has already been established by this court, that the constitutional provision in question does not grant or limit jurisdiction, nor does it fix or define the loci of actions, nor does it destroy the universal distinction between local and transitory actions, but that it relates merely to the subject-matter of a change of venue and places an inhibition to a change except as by law provided.

The judgment of the court below is reversed, the court directed to reinstate the case, and to overrule the demurrer, and

to proceed with the case in accordance with the views herein expressed.

McCARTY, J., concurs.

BARTCH, C. J.

I dissent, and for an expression of my views on the points discussed in the opinion of the majority herein, refer to my opinion in the case of *Gibbs v. Gibbs,* 26 Utah 398-433, 73 Pac. 641.