*This opinion is subject to revision before final publication in the Pacific Reporter*

**2020 UT 17**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

DAVIS COUNTY,
*Appellant,*

*v.*

PURDUE PHARMA, L.P., *et al.*,[1]
*Appellees.*

No. 20190487
Heard December 11, 2019
Filed April 23, 2020

On Interlocutory Appeal

Second District, Farmington
The Honorable David M. Connors
No. 180700870

Attorneys:

Douglas B. Thayer, Wm. Kelly Nash, Andy V. Wright,
Jordan K. Cameron, Mark R. Nelson, Jessica Griffin Anderson,

---

[1] Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Purdue Pharma Inc.; The Purdue Frederick Company Inc.; McKesson Corp.; McKesson Medical-Surgical, Inc.; Amerisourcebergen Corp.; Amerisourcebergen Drug Corp.; Mallinckrodt LLC; Actavis LLC; Actavis Pharma Inc.; Watson Laboratories Inc.; Allergan Finance LLC; Allergan Sales LLC; Allergan USA Inc.; Depomed, Inc. n/k/a Assertio Therapeutics Inc.; Cardinal Health Inc.; Cardinal Health 105 Inc.; Cardinal Health 107 LLC; Cardinal Health 108 LLC; Cardinal Health 110 LLC; Cardinal Health 112 LLC; Cardinal Health 200 LLC; Cardinal Health 414 LLC; Abbvie Inc.; Knoll Pharmaceutical Company; Perry Fine; Scott Fisherman; Lipocine Inc.; Lipocine Operating Inc.; Spriaso LLC.

David B. Nielson, Lehi; Thomas J. Burns, R. Blake Hamilton,
Salt Lake City; Martin J. Phipps, Barry Deacon, Jason M. Milne,
Daniel R. Griffin, Meagan Talafuse, San Antonio, Texas;
Troy S. Rawlings, Neal C. Geddes, Michael D. Kendall, Farmington,
for appellant

Andrew G. Deiss, John Robinson Jr., Corey D. Riley,
Elisabeth M. McOmber, Erik A. Olson, Trevor C. Lang,
Kamie F. Brown, Kristine M. Larsen, Geoffrey C. Haslam,
Tyler V. Snow, Brent O. Hatch, Lara A. Swensen, Jess M. Krannich,
Trevor J. Lee, Brent R. Baker, Jonathan D. Bletzacker,
D. Matthew Moscon, Michael Menssen, Joseph R. Brubaker,
Rod N. Andreason, Mark A. Nickel, Salt Lake City; Mark Bettilyon,
Sandy; Charles C. Lifland, Amy Laurendeau,
Los Angeles, California, for appellees

---

ASSOCIATE CHIEF JUSTICE LEE authored the opinion of the Court, in
which CHIEF JUSTICE DURRANT, JUSTICE PEARCE, JUSTICE PETERSEN, and
JUDGE HARRIS joined.

Having recused himself, JUSTICE HIMONAS does not participate
herein; COURT OF APPEALS JUDGE RYAN M. HARRIS sat.

---

ASSOCIATE CHIEF JUSTICE LEE, opinion of the Court:

¶1    This is one of thousands of cases filed by state and local
governments against opioid manufacturers in courts across the
country. The plaintiffs in these cases assert, among other things, that
manufacturers and distributors of opioid drugs misled doctors and
consumers about the safety of these drugs, which led to medically
unnecessary prescriptions and ultimately to the abuse of opioids—
the opioid epidemic. They seek to hold defendants liable for the
public costs arising from the use and misuse of opioid drugs.

¶2    Fifteen of these opioid cases have been filed in the Utah
courts—with one or more cases pending in each of our eight judicial
districts. Various counties have filed suit in their home judicial
districts. The first such case was filed by Summit County in the third
district. Salt Lake and Tooele Counties also filed in that district.
Davis County then filed suit in the second district, and various other
counties filed in the courts in their respective home districts.

¶3    In November 2018, various manufacturer defendants filed a
motion to consolidate all of the pending cases in the state in the third
district. Citing Utah Rule of Civil Procedure 42, defendants asserted

that the interests of judicial economy and justice would be served by consolidating all of the pending cases, at least for pretrial purposes, in the court in which the first related action was filed. The third district court granted the motion in part, consolidating the three third district cases for pretrial purposes but declining to order transfers from outside the third district. In so ruling the court concluded that the "benefits of pretrial coordination far outweigh the potential prejudice to any litigant," but declined to endorse what it viewed as an "untested interpretation of Rule 42 to consolidate matters pending in other judicial districts." Yet the court also invited judges in other districts to consider the possibility of transferring their opioid cases to the third district "as a means of facilitating pretrial coordination and achieving the benefits it offers."

¶4 One of the manufacturer defendants (Janssen Pharmaceuticals, Inc.) took the third district court up on that suggestion. It filed a motion in the second district, asking the court to transfer the Davis County action to the third district for discovery and pretrial proceedings. Davis County opposed the motion, asserting (among other things) that the district court lacked the power to transfer the case under civil rule 42 and that transfer was foreclosed under Utah Code section 78B-3-309. Because the statute speaks only of transfer for trial purposes, Davis County claimed that the statute preempted any inherent power vested in the district court. And even assuming that the statute could be viewed to endorse transfer only for discovery and pretrial purposes, Davis County contended that the conditions of the statute were not satisfied and that transfer was thus improper. Lastly, Davis County asserted that the interests of justice and judicial economy disfavored transfer for pretrial proceedings even assuming that the district court had some kind of authority (inherent or otherwise) to grant such a motion.

¶5 The second district court granted the transfer motion. It found that it lacked the power to consolidate these proceedings under civil rule 42 and held that Utah Code section 78B-3-309 did not apply, but concluded that it had the authority to transfer for pretrial proceedings under its "inherent power to manage its cases, and docket." In explaining the basis for exercising that power, the court concluded that "there are significant benefits that will result from the partial transfer of venue," including the following:

> (1) Conservation of judicial resources by avoiding the need for eleven judges to manage twelve substantively similar lawsuits, in parallel, at the same time; (2) Avoidance of inconsistent legal rulings regarding the

> pleadings, discovery disputes—of which there are likely to be many—and potentially dispositive motions; and (3) Avoidance of unnecessarily duplicative discovery, and judicial coordination and management of the extraordinary discovery, well beyond the standard limits set by Rule 26, that is almost certainly required in a litigation of this size.

In light of these considerations the court found that "a limited transfer of venue for pretrial proceedings [would] promote the ends of justice and the efficient administration of pending cases and dockets."

¶6 Davis County filed a petition for leave to challenge the transfer on interlocutory appeal, which we granted. In challenging the transfer, Davis County first questions the authority of the district court to enter an order transferring an action for pretrial purposes only. It then contends that the district court exceeded the bounds of its discretion in ordering transfer here even assuming that the court has the power to grant such motions.

¶7 We affirm. First, we consider the question of the district court's authority to grant a motion to transfer for pretrial proceedings. This presents a series of questions of law, which we review *de novo. See WDIS, LLC v. Hi-Country Estates Homeowners Ass'n*, 2019 UT 45, ¶ 15, 449 P.3d 171 (questions of law are reviewed for correctness). We hold that the district court has inherent authority to grant such a motion, which is undisturbed by Utah Code section 78B-3-309. Second, we consider Davis County's challenge to the district court's decision to exercise its authority in granting the motion to transfer. This is a question committed to the district court's discretion, which we review for an abuse of discretion. *Chamblee v. Stocks*, 344 P.2d 980, 981 (Utah 1959). We hold that the district court acted well within the bounds of its discretion in granting the motion to transfer the Davis County action for discovery and pretrial proceedings.

I

¶8 Appellees cite three possible sources of authority for the transfer of this action from the second district to the third: civil rule 42, Utah Code section 78B-3-309, and the inherent power of the court. Davis County contests all three grounds. It asserts that civil rule 42 is addressed only to the authority of a district judge to consolidate cases within a single district, contends that section 78B-3-309 speaks only to transfer to "change the place of trial," and argues

that the statute occupies the field in a manner preempting any inherent judicial power.

¶9    Davis County makes some strong points. The language and structure of rule 42 seem aimed at consolidation of cases within a single district. Rule 42 authorizes a "court" to consolidate any "actions involving a common question of law or fact pending before the court" and to "make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay." UTAH R. CIV. P. 42. But the rule seems to be speaking of consolidation within a district — not multi-district transfer from one district to another. This seems evident in the requirement that a consolidated case "be heard by the judge assigned to the first case" filed, or by "another judge" if assigned by the *presiding judge . . .* for good cause." *Id.* (emphasis added). The role of "presiding judge" exists only in each individual district. And that indicates that rule 42 speaks to consolidation within a single judicial district, not to transfer from one district to another.

¶10 The venue transfer statute also has limited application. It speaks of transfer to "change the place of trial" and identifies factors that seem addressed to considerations of relevance to trial — to whether "there is reason to believe that an impartial trial cannot be had" in the venue where the case was filed and whether "the convenience of witnesses . . . would be promoted" by transfer. UTAH CODE § 78B-3-309.

¶11 For these reasons we decline to interpret rule 42 or Utah Code section 78B-3-309 to authorize the multi-district transfer of this action from the second district to the third district. Yet that still leaves the question whether the second district court had the inherent power to order this transfer. Because the venue transfer statute speaks only to transfer for trial purposes, Davis County asks us to interpret it to foreclose any inherent judicial power to transfer venue for pretrial purposes. Citing *Hale v. Barker*, 259 P. 928, 931 (Utah 1927), Davis County asserts that the "[d]istrict courts of this state have only such authority to transfer for trial causes of action from one county to another as is granted by the [Utah] Code." *See also State v. Cauble*, 563 P.2d 775, 777 (Utah 1977) (holding that a change of venue is prohibited "except when authorized by law"). And Davis County invites us to view the gap in this statute as a "purposeful omission" — a restriction of venue transfer to transfer for trial, with an implied prohibition of transfer for pretrial purposes.

¶12 Our cases admittedly have spoken of "purposeful omissions." We have gone so far as to say that "all omissions"

should be viewed as "purposeful," under the canon that "the expression of one [term] should be interpreted as the exclusion of another." *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 14, 267 P.3d 863 (alteration in original) (citation omitted). But this canon, like most others, is more of a presumption than a hard-and-fast rule. No one thinks that "the expression of one term" is always "the exclusion of another." And the canon, as stated, begs the embedded question of what counts as a *purposeful omission*.

¶13 Not every gap in the law is a purposeful omission. Some gaps are just gaps—to be filled in later, as by the exercise of common-law power or the inherent power of a court. The *gap* question presented here is essentially a question of field preemption. It asks whether a statute that regulates venue transfer for trial purposes should be viewed as so comprehensive that it preempts the exercise of inherent power of a court in the field—foreclosing any legal basis for venue transfer for pretrial purposes.

¶14 We do not view the venue transfer statute as fulfilling such a role. We interpret it as leaving a gap that may be filled in by the exercise of the inherent power of a court. And we thus conclude that the statutory regulation of venue transfer for trial purposes is not a "purposeful omission" under the above-cited canon of construction. We reach this conclusion for several reasons, which combine to confirm that the legislature's regulation of venue transfer for trial does not displace the inherent power of the courts to transfer venue for other purposes.

¶15 A threshold point concerns the evolution in the nature of civil litigation since the era in which the venue transfer statute was first enacted. The statute has been on the books since the earliest days of statehood. *See* 1901 Utah Laws Ch. 23, § 2934. Since that time, the focus of the statute has been on venue transfer *for trial*. And that makes sense in historical perspective. From the time of statehood through much of the first half of the twentieth century, civil litigation was essentially trial practice. Discovery and pretrial practice were not entirely unknown. But the key stage of the civil case was trial. [2]

---

[2] *See Ulrich v. McConaughey*, 88 N.W. 150, 154 (Neb. 1901), modified, 96 N.W. 645 (Neb. 1903) (explaining that discovery under the common law "was very strict in confining each party to his own means of proof, and, as it has been expressed, regarded a trial as a cock fight, wherein he won whose advocate was the gamest bird

(continued . . .)

¶16 That began to change with the adoption of formal rules of civil procedure. Since the adoption of such rules, the focus of civil litigation increasingly has turned to procedural precursors to trial—the discovery process and pretrial motion practice. Today most cases settle or are resolved on motion before trial.[3] And in this era, the parties may be as concerned about pretrial venue as they are about venue for trial.

¶17 This background makes us reluctant to view the gap in the venue transfer statute as a "purposeful omission" sustaining the inference that the legislature meant to foreclose venue transfer for pretrial purposes. Because trial was the focus of civil litigation from the time the statute was first enacted and for many decades thereafter, the better inference is that the legislature was thinking only about the need for venue transfer for trial and saw no need to regulate transfer for pretrial purposes. This suggests that the legislative gap at issue here is just a gap, not a field-occupying omission barring the exercise of inherent judicial power.

---

with the longest spurs"); Stephen N. Subrin, *Fishing Expeditions Allowed: The Historical Background of the 1938 Federal Discovery Rules*, 39 B.C. L. REV. 691, 694 (1998) (describing historical discovery practices leading up to the adoption of the federal rules of civil procedure in 1938 and noting that "[h]istorically, discovery had been extremely limited in . . . the United States"); Edson R. Sunderland, *Foreword to* GEORGE RAGLAND, JR., DISCOVERY BEFORE TRIAL, at iii (1932) ("[N]o procedural process offers greater opportunities for increasing the efficiency of the administration of justice than that of discovery before trial" because "[f]alse and fictitious causes and defenses thrive under a system of concealment and secrecy in the preliminary stages of litigation followed by surprise and confusion at the trial." But while "[a]ll this is well recognized by the profession, . . . there is a wide-spread fear of liberalizing discovery. Hostility to 'fishing expeditions' before trial is a traditional and powerful taboo.").

[3] Theodore Eisenberg & Charlotte Lanvers, *What is the Settlement Rate and Why Should We Care?* 6 J. EMPIRICAL LEGAL STUD. 111, 111–13 (2009); Martin H. Redish, *Summary Judgment and the Vanishing Trial: Implications of the Litigation Matrix*, 57 STAN. L. REV. 1329, 1329 (2005) ("There can be little question that, at least in the federal courts, trials are vanishing. The statistics make this conclusion inescapable.").

¶18 This conclusion is reinforced by a second historical development of relevance to our decision. When the venue statute was first enacted, "the legislature possessed authority to adopt rules of procedure and evidence, but delegated that authority to the supreme court." Kent R. Hart, Note, *Court Rulemaking in Utah Following the 1985 Revision of the Utah Constitution*, 1992 UTAH L. REV. 153, 153 (1992). But that changed with the amendments to article VIII of the Utah Constitution in 1985. The 1985 amendments vest exclusive primary authority in this court to "adopt rules of procedure and evidence to be used in the courts of the state." UTAH CONST. art. VIII, § 4. The legislature's power in this field is limited and secondary. The legislature has the power only to "amend" the rules that we adopt, and to do so on a "two-thirds" vote of "all members of both houses of the Legislature." *Id.*; *see also Brown v. Cox*, 2017 UT 3, ¶ 31, 387 P.3d 1040 (holding that "the Legislature must clearly express its intent to amend our rules of procedure and evidence, and that a joint resolution specifically aimed at a rule of evidence or procedure is an effective mechanism for the Legislature to express that intent").

¶19 This is also significant. Venue transfer is a quintessential matter of procedure. *See State v. Rettig*, 2017 UT 83, ¶ 58, 416 P.3d 520 (explaining that something is "quintessentially procedural" when "it prescribes the manner and means of raising a particular issue in court proceedings"); *Petty v. Clark*, 192 P.2d 589, 593–94 (Utah 1948) (describing procedural law as "law which pertains to and prescribes the practice and procedure or the legal machinery by which the substantive law is determined or made effective"). So this court could adopt a rule regulating venue transfer, and the legislature lacks the power, under the constitution as it stands today, to foreclose the adoption of such a rule. The legislature's authority would be limited to amending any rule we might adopt.

¶20 In so stating we are not questioning the constitutionality of the venue transfer statute as it stands. That statute was enacted in an earlier era, at a time when the legislature had shared authority over procedural rulemaking. And because no party has asked us to find that the venue statute is unconstitutional, certainly no party has carried the burden of establishing unconstitutionality. We accordingly see no reason to question the viability of the statute as

far as it goes—in regulating the terms and conditions of venue transfer *for trial*.[4]

¶21 But we do see this history as reinforcing our reluctance to treat the venue transfer statute as fully occupying the field in a manner foreclosing any judicial power over venue transfer. The constitutional landscape, as it stands today, is incompatible with Davis County's position. If venue transfer is a matter of procedure, then this court has the exclusive primary authority to regulate this field through the adoption of rules of procedure. The legislature's authority is limited, and secondary. And that conclusion forecloses Davis County's view that the venue transfer statute preempts inherent judicial power through a "purposeful omission" of any standards governing transfer for pretrial purposes.

¶22 We have not yet exercised our power to adopt a rule regulating transfer from one district court to another, or transfer of venue for pretrial purposes (or for any other purposes for that matter). So that still leaves the question whether the district court had the power to order a multi-district transfer for pretrial purposes in the absence of such a rule. We hold that it did. And we root that power in the inherent authority of the court.

¶23 We base this determination on a third point that drives our holding—the observation that the courts have long recognized and exercised "inherent" judicial power to manage court proceedings in a manner that "promote[s] efficiency in the judicial process." *Garver v. Rosenberg*, 2014 UT 42, ¶ 15 n.24, 347 P.3d 380. Such power may be manifested in positive rules of procedure. But formal rules of procedure are a modern invention. Traditionally, the authority to transfer venue and to manage other aspects of court procedure was rooted in the "common law" as an element of the court's "inherent

---

[4] That said, there may be good reasons for us to consider the possibility of adopting a venue transfer rule in our rules of civil procedure—one that either enshrines the existing venue transfer standards in a rule or, alternatively, amends or supplements the existing standards. Our advisory committee on the rules of civil procedure should consider this question and make recommendations to the court. Such a rule could obviate any potential constitutional questions regarding the venue transfer statute. It could also have the virtue of centralizing all venue transfer standards in a single rule.

power." *Anderson v. Johnson*, 268 P.2d 427, 430 (Utah 1954). "From the birth of common law courts until the late-nineteenth century, courts regularly acted on their own on various procedural matters." Benjamin H. Barton, *An Article I Theory of the Inherent Powers of the Federal Courts*, 61 CATH. U. L. REV. 1, 32–33 (2011). And that power has long been viewed to encompass the authority to transfer an action from one district to another for the sake of convenience and in the interests of justice.

¶24 This is implicit in our opinion in *Sanipoli v. Pleasant Valley Coal Co.*, 86 P. 865 (Utah 1906). In *Sanipoli* this court noted the existence of a "practice" tracing back to "territorial days" of our courts "transferring cases and proceedings . . . for the mere convenience of the bench and bar." *Id*. at 868–69. *Sanipoli* held that an original provision of article VIII of the Utah Constitution precluded this practice—in the section 2 requirement that "[a]ll civil and criminal business arising in any county must be tried in such county, unless a change of venue be taken, in such cases as provided by law." *See id*. at 867–69 (quoting UTAH CONST. art. VIII, § 5 (repealed 1985)). But that provision of article VIII, section 2 was repealed and replaced in 1985, in the above-noted amendments establishing this court's power to adopt rules of procedure. And with the old article VIII, section 5 prohibition eliminated, the remaining significance of *Sanipoli* is its recognition of the longstanding nature of the practice of venue transfer for the sake of convenience and in the interests of justice.

¶25 This is the answer to Davis County's assertion that a district court's authority to transfer venue is limited to that "granted by the [Utah] Code." *Hale*, 259 P. at 931. That premise does not hold under the Utah Constitution as it stands today. This court has unquestioned authority to adopt a rule of procedure governing venue transfer, and our district courts likewise have inherent power to transfer a case from one district to another.

¶26 We uphold the second district court's authority to transfer this action on this basis. We find no authority for multi-district transfer under civil rule 42 or Utah Code section 78B-3-309 but conclude that our district courts retain inherent power to make such a transfer in the interests of justice and for the sake of judicial economy.

## II

¶27 Davis County also questions the basis for the second district court's decision to transfer this action to the third district. It cites cases recognizing the prerogative of a plaintiff to file and pursue its

claims in its home district.[5] And it seeks to diminish the efficiencies purportedly flowing from the transfer of related opioid cases and their consolidation in a single district. With these concerns in mind, Davis County insists that the second district court abused its discretion in transferring this action to the third district.

¶28 Davis County's choice of its home forum is a matter worthy of substantial deference. But that deference is diminished by the fact that the transfer here is for pretrial purposes only—for discovery and any pretrial motions. Because all parties are represented by out-of-state counsel and in-state counsel in Salt Lake City, Lehi, or Davis County, it seems unlikely that the transfer from the second district court (in Davis County) to the third district court (in Summit County) will make much of a difference to the convenience of the parties. Davis County officials may prefer the Davis County forum for any hearings on motions they may wish to attend. But we see no meaningful difference for in-state counsel, as the travel from Salt Lake City, Lehi, or Davis County to either court can be completed in a fairly short time. Out-of-state counsel, on the other hand, will likely arrive in Utah by air travel to the Salt Lake City International Airport, and travel to either court can be completed in a relatively short time. As for discovery, depositions typically take place in counsel's office or conference room. So again, we see no substantial impact on Davis County resulting from the transfer.

¶29 Davis County's questions about the economies resulting from venue transfer are fair points for debate. Multi-district litigation is not without its pitfalls.[6] And Davis County may be right to predict

---

[5] *See Summa Corp. v. Lancer Industries, Inc.*, 559 P.2d 544, 546 (Utah 1977) ("[T]he general policy of the law is that when a plaintiff has commenced a lawsuit and acquired jurisdiction over the defendant, he should be allowed to pursue his remedy."); *Hale v. Barker*, 259 P. 928, 931 (Utah 1927) ("The district court, by ruling that it would grant the motion, in effect declined to proceed to hear and determine the cause and therefore refused to perform an act enjoined upon it as part of its official duty. That is to say, the plaintiffs, as we have held, having the right to institute the action in Weber county, it must, in our judgment, necessarily follow that it was the duty of the court, as a public officer, to hear and determine the controversy between the parties and render judgment.").

[6] Danielle Oakley, Note, *Is Multidistrict Litigation a Just and Efficient Consolidation Technique? Using Diet Drug Litigation as a Model*

(continued . . .)

that it could get to trial or final disposition more quickly if this case remained in the second district. These concerns likely could have sustained a reasonable decision denying the motion to transfer in this case. But the motion was granted. And we defer to the district court under the abuse of discretion standard of review.

¶30 We do so in light of the broad range of considerations of judicial economy cited by the district court in granting this motion[7] and the fact that courts throughout the country have granted multi-district transfer motions in parallel opioid proceedings.[8] In light of these circumstances we are in no position to conclude that the second district court exceeded the bounds of its discretion in transferring this case to the third district. And we affirm on that basis.

III

¶31 In affirming the transfer order in this case we do not disparage the prerogative of a plaintiff like Davis County to select its

---

*to Answer This Question*, 6 NEV. L.J. 494, 494 (2005-2006) ("Multidistrict litigation is a polarizing practice, with staunch supporters and fierce opponents."); *id.* at 512 ("Multidistrict litigation does not increase convenience to plaintiffs or their witnesses. It actually seems to do the opposite. . . . Plaintiffs, of course, file in the forum they find most convenient. By removing the action to a jurisdiction hundreds or thousands of miles away, plaintiffs are obviously inconvenienced."); *id.* at 514 ("Multidistrict litigation is undoubtedly more efficient than the alternative both for defendants and for society, collectively. Again, however, plaintiffs do not reap the benefit that defendants do because in multidistrict litigation each plaintiff becomes a much less significant piece of a much larger picture, thereby prolonging each plaintiff's role in the litigation.").

[7] Those considerations included the "[c]onservation of judicial resources by avoiding the need for eleven judges to manage twelve substantively similar lawsuits," the "[a]voidance of inconsistent legal rulings" on discovery disputes and "dispositive motions," the "[a]voidance of unnecessarily duplicative discovery, and judicial coordination and management of the extraordinary discovery."

[8] *See* Nicolas P. Terry, *The Opioid Litigation Unicorn*, 70 S.C. L. REV. 637, 638–39 (2019).

home district as the forum of its choice. Nor should this opinion be viewed as opening the floodgates to cross-district transfers in Utah generally. A plaintiff's choice of its home forum should not be overridden lightly. Multi-district litigation, moreover, is not without its drawbacks, and we are not suggesting that a motion to transfer a case from one district to another should be granted lightly. We affirm the transfer order in this case, however, because we see no substantial inconvenience to Davis County resulting from a transfer to the third district for pretrial purposes, and because the district court weighed the relevant costs and benefits of transfer in a manner meriting our deference on appeal.

¶32 In so doing we also raise the possible need for a rule of civil procedure governing multi-district litigation or transfer between districts. Such a rule would likely be preferable to the *ad hoc* exercise of inherent judicial power. With these concerns in mind, we hereby direct our civil rules advisory committee to consider the possibility of a rule to guide judicial discretion in this important area going forward.

———————